IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

KEVIN WILMATH                                                       PLAINTIFF

V.                           CIVIL NO. 08-6011

ST. JOSEPH MERCY HEALTH CENTER                                      DEFENDANT

### MEMORANDUM OPINION

Before the Court is Defendant St. Joseph Mercy Health Center's Motion for Summary Judgment and accompanying documents (Docs. 14-16, 25) and Plaintiff Kevin Wilmath's Response and accompanying documents (Docs. 22-24). St. Joseph seeks summary judgment contending that Wilmath may not pursue his claim because of lack of standing and judicial estoppel, his claim is time-barred by the statute of limitations, and that the evidence shows that his termination did not violate the Family and Medical Leave Act (FMLA). For the reasons described below, Defendant's Motion is **GRANTED** and the Complaint **DISMISSED WITH PREJUDICE.**

**A. Standard of Review**

Summary Judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all

1

facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574 (1986). "The non-moving party, however, must still 'present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [his] favor.'" *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1003-04 (8th Cir. 2005). Under Local Rule 56.1(c) all facts set forth in the statement of undisputed facts filed by the moving party will be deemed admitted unless controverted by the nonmoving party.

**B. Facts and Background**

The following facts are undisputed or deemed admitted except where noted. Plaintiff Kevin Wilmath was formerly employed at St. Joseph Mercy Health Center as a supervisor in the hospital's Health Information Management department. Beginning in 2003, Wilmath was the supervisor of the facility where St. Joseph's records and x-rays are stored. As early as 2001, Wilmath was using hospital computers to access pornographic websites.

During the summer of 2005, Wilmath had an extramarital affair that led to an allegation of rape. Wilmath conducted at least part of this affair during the workday and on at least one occasion used a hospital vehicle to leave work to conduct the affair. As part of the investigation, Wilmath's time records and personnel records were subpoenaed. In the course of reviewing Wilmath's files, questions arose about the propriety of Wilmath's timesheets

and his method of recording his time.

On August 3, 2005, Wilmath left work, attempted suicide, and was subsequently hospitalized. Wilmath's wife submitted a proper FMLA leave request that was approved beginning August 4, 2005. On September 1, 2005, Wilmath notified Ray Pelton, St. Joseph's Vice President for Human Resources, that he desired to return to work. Pelton told Wilmath that a physician's release was necessary for him to return to work. The next day, September 2, 2005, Wilmath was arrested for rape. On September 12, 2005, St. Joseph's received a letter from Wilmath's physician stating he would be released to work on October 26, 2005.

On September 14, 2005, Wilmath's supervisor, Renee Williams, was given access to Wilmath's work computer and email to determine whether he had received any business emails that required a response or other action. Williams noted Wilmath had received email from an internet dating service on his work email. St. Joseph's had an acceptable use policy that stated that "St. Joseph's information services, its systems and networks, may only be used for legitimate business purposes." Wilmath was familiar with the acceptable use policy. Whether Williams or anybody else knew of Wilmath's personal use of work email and the de facto acceptability of personal use of work email is contested.

The same day that Williams accessed Wilmath's computer, September 14, 2005, Pelton advised Wilmath by letter that he was

being placed on a special leave of absence that was to last the lesser of six months or the disposition of the rape case and that he was being investigated for conduct that could lead to his termination. This conduct included "falsification of time sheets and misuse of the 'Acceptable Use' policy regarding usage of the internet." Pelton's stated reason for the leave was St. Joseph's arrest policy, which called for a special, personal leave of absence of up to six months if an employee was unable to work because of an arrest and incarceration or if St. Joseph's management determined that allowing return would impact the safe and efficient operation of the Health Center.

   At some point during the week after his September 14, 2005 letter, Pelton informed Williams that Wilmath would be terminated for misconduct and authorized her to post Wilmath's position as open. Williams sent an email posting the job opening on September 21, 2005. On September 23, 2005, two days after Williams posted the job opening, Pelton told Wilmath he was terminated for falsifying time records and violating the computer acceptable use policy. A week after Pelton advised Wilmath that he was terminated, Pelton asked the St. Joseph's IT department to perform an audit of Wilmath's computer and internet usage. The report on Wilmath's computer usage was completed in October and demonstrated Wilmath's viewing of pornographic materials at work. St. Joseph's awareness of Wilmath's use of pornographic websites before the audit is

contested.

On October 11, 2005, Wilmath and his wife filed a voluntary petition for Chapter 7 bankruptcy. Wilmath did not list any unliquidated claims on his verified bankruptcy petition. Wilmath filed an amendment to the petition on January 16, 2006 that again did not disclose a potential claim against St. Joseph's. The Wilmaths' debts were discharged on February 9, 2006. In 2007, a jury acquitted Wilmath of rape. Wilmath filed the complaint giving rise to this suit on February 6, 2008.

**C. Discussion**

**1. Statute of Limitations**

The FMLA grants the right to twelve workweeks of leave during any twelve month period because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). Wilmath's eligibility for leave is not in contention. It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" this right. 29 U.S.C. § 2615(a)(1). An aggrieved employee has two years "after the date of the last event constituting the alleged violation for which such action is brought" to bring a private action. 29 U.S.C. § 2617(c)(1). If the violation is willful, the employee has three years to bring his action. 29 U.S.C. § 2617(c)(2). To show willfulness, an employer must know, or act in reckless disregard, that its actions would violate the FMLA. *Hanger v. Lake County*, 390 F.3d 579, 584 (8th Cir. 2004). An employer's

general knowledge of the statute is insufficient to prove willfulness. *Id*.

Wilmath was terminated no later than September 23, 2005. The complaint was filed on February 6, 2008, which is more than two years, but less than three years after the alleged attempt to interfere with his FMLA leave. Not only did Wilmath's complaint not specifically allege, or generally suggest, a willful violation, but Wilmath did not demonstrate a genuine issue of material fact in his response to St. Joseph's Summary Judgment Motion. To create a genuine issue of material fact that a violation was willful, Wilmath must show not only evidence that an employer interfered with a right guaranteed by the FMLA, but also that the employer knew, or acted in reckless disregard, that its action would violate the FMLA. That the employer should have known that its actions would violate the FMLA is insufficient. Bare recognition that an employee had a right to leave under the FMLA and the employer violated that right is not sufficient to create a genuine issue of material fact concerning willfulness. St. Joseph's has proffered evidence that there was no willful violation. Wilmath has failed to demonstrate a genuine issue of material fact of St. Joseph's willfulness. Wilmath's claim is therefore time barred.

    **2. Standing After Bankruptcy**

The federal bankruptcy code calls for creation of an estate that includes all legal or equitable interests of the debtor in

property. 11 U.S.C. § 541(a)(1). "[T]he property of the bankruptcy estate includes all causes of action that the debtor could have brought at the time of the bankruptcy petition." *U.S. ex rel. Gebert v. Transp. Admin. Serv.*, 260 F.3d 909, 914 (8th Cir. 2001). However, only "causes of action belonging to the debtor at the commencement of the case are included within the definition of property of the estate." *In re Ozark Equipment Co.*, 816 F.2d 1222, 1225 (8th Cir. 1987). Only the bankruptcy trustee may pursue causes of action included as property of the bankruptcy estate. *Lawrence v. Jackson Mack Sales, Inc.*, 837 F.Supp. 771, 779 (S.D. Miss. 1992). Before a debtor may pursue a claim, there must be a judicial determination that the trustee has abandoned the claim. *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988).

In this case, Wilmath filed for bankruptcy on October 11, 2005. Wilmath was terminated no later than September 23, 2005. Wilmath's potential right of action under the FMLA accrued before his bankruptcy filing, and is therefore the property of the bankruptcy trustee as part of the bankruptcy estate. There is no indication that the trustee has abandoned the claim. Therefore, Wilmath's lack of standing to bring this claim is an additional ground for granting summary judgment.

**D. Conclusion**

Wilmath has failed to create a genuine issue of material fact

that St. Joseph's actions constituted a willful violation of his rights under the FMLA. Wilmath's claim is therefore time-barred. Alternatively, because of his bankruptcy, Wilmath's claim is part of the property of the bankruptcy estate, and thus Wilmath no longer has standing to pursue his FMLA claim. Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**. Each party is to bear its own fees and costs.

IT IS SO ORDERED this 9th day of January, 2009.

/S/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge